**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
VALDOSTA DIVISION**

| | | |
|---|---|---|
| JERMICHAEL PEARSON, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| VS. | : | |
| | : | **7 : 13-CV-26 (HL)** |
| CEDRIC TAYLOR, *et al.*, | : | |
| | : | |
| Defendants. | : | |
| —————————————— | : | |

## RECOMMENDATION

The Plaintiff filed this action pursuant to 42 U.S.C. § 1983 on March 8, 2013, raising allegations of excessive force and deliberate indifference to serious medical needs.   (Doc. 1). After reviewing Plaintiff's allegations, the Court directed Plaintiff to file a recast Complaint. (Doc. 6).   Plaintiff filed his recast Complaint on June 28, 2013, and the Court directed service on Defendants Taylor, Orr, Philbin, and Weston.   (Docs. 10, 11).   This Recommendation addresses a Motion for Summary Judgment filed by Defendant Weston (Doc. 54).   The Court notified the Plaintiff of the filing of Defendant Weston's Motion for Summary Judgment, advised him of his obligations under the law, and directed him to respond thereto within thirty (30) days of the date of the Court's Order.   (Doc. 57).

Plaintiff has filed various documents ostensibly in response to the pending Motion for Summary Judgment.   In considering Defendant Weston's summary judgment motion, the Court has reviewed and considered each of the Plaintiff's responses and declarations in opposition to the summary judgment motion.   (Docs. 63, 65, 67, 70, 71, 72).   However, certain portions of Plaintiff's declarations are ultimately not relevant to the claim of alleged

excessive force through the use of pepper spray on January 15, 2013, or are otherwise duplicative of statements already in the record.   *Id.*

## Background

Plaintiff's claims arise out of events occurring on January 15, 2013 while he was confined at Valdosta State Prison.   In his recast Complaint, the Plaintiff alleges that Defendant Weston used excessive force in spraying him with pepper spray after Plaintiff refused to hand over a weapon that had been used by another inmate and discarded in Plaintiff's cell.

Defendant Weston has filed a Motion for Summary Judgment in which he asserts that the Plaintiff cannot establish an Eighth Amendment violation based on the January 15, 2013 pepper spray incident.   (Doc. 54).   Defendant Weston has supported his motion for summary judgment with excerpts of the Plaintiff's January 2014 deposition, the affidavit testimony of Defendant Weston and Nurse Anita Evans, prison reports regarding the pepper spray incident, a partial video recording of the events following the pepper spray incident, and portions of the Plaintiff's medical records. (Docs. 54-3 – 54-12).

## Standard of Review

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, the "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."   Fed.R.Civ.P. 56(a).

> A party asserting that a fact cannot be or is genuinely disputed
> must support the assertion by:
> (A) citing to particular parts of materials in the record, including
> depositions, documents, electronically stored information,

> affidavits or declarations, stipulations (including those made for
> purposes of the motion only), admissions, interrogatory answers,
> or other materials; or
> (B) showing that the materials cited do not establish the absence
> or presence of a genuine dispute, or that an adverse party cannot
> produce admissible evidence to support the fact.

Fed.R.Civ.P. 56(c)(1).

As the party moving for summary judgment, the defendant has the initial burden to demonstrate that no genuine issue of material fact remains in this case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986); *Clark v. Coats & Clark, Inc.*, 929 F.2d 604 (11th Cir. 1991). The movant "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the record, including pleadings, discovery materials, and affidavits, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323. "If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . grant summary judgment if the motion and supporting materials --including the facts considered undisputed -- show that the movant is entitled to it." Fed.R.Civ.P. 56(e)(3).

## Discussion

The Eighth Amendment forbids cruel and unusual punishment, and this prohibition governs "the treatment a prisoner receives in prison and conditions under which he is confined." *Farrow v. West*, 320 F.3d 1235, 1242 (11th Cir. 2003). "[W]henever prison officials stand accused of using excessive physical force in violation of the Cruel and Unusual Punishments Clause, the core judicial inquiry is that set out in *Whitley* [*v. Albers*, 475 U.S. 312

3

(1986)]: whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm."   *Hudson v. McMillian*, 503 U.S. 1, 5 (1992). "[A]nalysis of an Eighth Amendment excessive force claim is contextual and requires that many factors be considered: 'the need for the application of force, the relationship between that need and the amount of force used, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response.'" *Harris v. Chapman*, 97 F.3d 499, 505 (11th Cir. 1996) (quoting *Hudson*, 503 U.S. at 5).   "Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights."   *Gilmere v. City of Atlanta*, 774 F.2d 1495, 1500 (11th Cir. 1985) (quoting *Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir. 1973)), *abrogated on other grounds by Graham v. Connor*, 490 U.S. 386 (1989).

To establish a claim for excessive force, the Plaintiff must show that (1) the Defendant acted with a malicious and sadistic purpose to inflict harm and (2) that a more than *de minimis* injury resulted.   *Johnson v. Breeden*, 280 F.3d 1308, 1321 (11th Cir. 2002).   The Supreme Court has clarified that "[t]he 'core judicial inquiry' . . . [is] not whether a certain quantum of injury was sustained, but rather 'whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'" *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010) (quoting *Hudson*, 503 U.S. at 7).   Although the extent of any injury is not alone dispositive of an excessive force case, it is "one factor that may suggest 'whether the use of force could plausibly have been thought necessary' in a particular situation."   *Hudson*, 503 U.S. at 7 (quoting *Whitley*, 475 U.S. at 321).   In considering whether a jailer's use of force

4

was excessive, the Eleventh Circuit considers the following specific factors:   "(1) the need for the force; (2) the relationship between that need and the amount of force used; (3) the extent of the resulting injury; (4) the extent of the threat to the safety of staff and inmates, as reasonably perceived by the responsible official on the basis of facts known to them; and (5) any efforts made to temper the severity of a forceful response."   *Danley v. Allen*, 540 F.3d 1298, 1307 (11th Cir. 2008), *overruled on other grounds as recognized by Randall v. Scott*, 610 F.3d 701 (11th Cir. 2010).

In his affidavit testimony, Defendant Weston admits to using pepper spray against the Plaintiff on January 15, 2013.   (Doc. 54-4, ¶¶ 17-19).   Defendant Weston testifies that on January 15, 2013, he was on duty at Valdosta State Prison as a CERT team member when an alert issued regarding an officer requiring assistance in K-Building.   *Id.* at ¶ 6.   An inmate had escaped his locked cell and attacked another inmate with a metal shank.   *Id.* at ¶¶ 7, 8. The shank had apparently been thrown into the Plaintiff's cell.   *Id.* at ¶ 10.   Weston observed the Plaintiff holding a bloody shank in his hand, and asked the Plaintiff to either turn the shank over or be handcuffed through the tray flap.   *Id.* at ¶¶ 13, 14.   Plaintiff refused and attempted to flush the shank down his toilet.   *Id.* at ¶ 15.   Defendant Weston ordered the Plaintiff three more times to either turn the shank over or be handcuffed, and each time the Plaintiff refused to comply.   *Id.* at ¶ 16.   Defendant Weston testifies that

> [a]t this point, I decided to use pepper spray on inmate Pearson. I needed to recover the shank as quickly as possible and restore safety and order to K-Building, especially because I was unsure how inmate Tate escaped his locked cell, and did not know whether Tate or other inmates would be able to similarly escape their locked cells at any moment.   I also could not enter inmate

Pearson's cell to retrieve the shank myself unless he was properly
compliant and secured.

I also needed to remove the shank from inmate Pearson's cell to
prevent Pearson from using the shank to injure himself, prison
officers, or other inmates.   I knew that inmate Pearson had a
history of possessing shanks, and believed that he could
potentially be dangerous.

. . .

I applied the pepper spray through the tray flap of Pearson's cell
in a three second burst, as I was trained to do.   I then shut the tray
flap and waited for the pepper spray to take effect.   This was the
only time that I discharged pepper spray during my encounter
with inmate Pearson.   After the application of pepper spray, I
never observed inmate Pearson coughing, vomiting, or throwing
up blood in his cell.   I also did not observe Pearson lose
consciousness or otherwise fall to the ground.   Instead, inmate
Pearson continued to move about his cell.

*Id.* at ¶¶ 17 – 19.


After another order from Defendant Weston and an order from another officer to submit to

handcuffing, the Plaintiff came to the door of his cell to be handcuffed.   *Id.* at ¶¶ 21-23.   The

Plaintiff was taken to the showers to be checked by a nurse, and after approximately 20

minutes spent waiting on the nurse and her examination, the Plaintiff was permitted to shower.

*Id.* at ¶¶ 24, 25.

In her affidavit testimony, Nurse Anita Evans states that she examined and treated the

Plaintiff following the pepper spray incident on January 15, 2013, but did not observe Plaintiff

vomiting and did not observe any injury to Plaintiff's body.   (Doc. 54-5, ¶¶ 11-14 ).   Nurse

Evans noted that the Plaintiff was alert and oriented, and showed no signs of a recent loss of

consciousness or respiratory distress.   *Id.* at ¶ 15.   Nurse Evans testified that, "[she] did not find any objective medical symptoms or injuries that would indicate an excessive amount of pepper spray was used on [Plaintiff]."   *Id.* at ¶ 16.   After Nurse Evans' examination, the Plaintiff was allowed to wash off the pepper spray, which had been delayed by the need for the use of force assessment by Nurse Evans.   *Id.* at ¶ 17.   Nurse Evans completed a Use of Force Assessment reflecting her findings after examining the Plaintiff.   (Doc. 54-11).

In his deposition testimony, the Plaintiff testifies in pertinent part that he informed Defendant Weston that the weapon had been thrown into his cell, and Defendant Weston asked the Plaintiff to put the weapon through the tray flap.   (Doc. 54-3, pp. 11-12).   Plaintiff refused, fearful of touching the weapon due to the blood remaining on it.   *Id.* at p. 12. Defendant Weston gave the Plaintiff a direct order to either give him the weapon or be pepper-sprayed, and the Plaintiff, rather than complying, asked Weston why would he pepper-spray him.   *Id.* at pp. 13-14.   Weston then sprayed pepper spray into Plaintiff's cell for between 1 and 2 minutes.   *Id.* at p. 15.   Plaintiff alleges that he then fainted for five minutes, and upon awakening was told by Defendant Weston and Sergeant Schnake to come to the cell door to be handcuffed.   *Id.* at pp. 16-17.   Plaintiff did not comply, and alleges that he could not breathe or move.   *Id.* at p. 17.   Defendant Weston then sprayed pepper spray a second time into the cell, for 10 to 15 seconds.   *Id.* at pp. 18-19.   Plaintiff still delayed moving towards the cell door, and continued suffering difficulties in breathing and walking. *Id.* at p. 19.   Plaintiff eventually moved to the cell door, was handcuffed and taken to the shower, where he maintains he was still throwing up, and waited for 20 minutes for a nurse to examine him.   *Id.* at pp. 22-23.

Officers began to video-tape the incident after the pepper spray had been released into Plaintiff's cell.   Although the Plaintiff contends that the Defendants violated Department of Corrections policy in failing to video the entire use of force incident, an allegation of non-compliance with prison regulations, without more, is not sufficient to state a claim for relief under § 1983.   *See Sandin v. Connor*, 515 U.S. 472, 482 (1995) (prison "regulations are not designed to confer rights on imates"); *Mathews v. Moss*, 2013 WL 462392 (11th Cir. Feb. 8, 2013) (affirming dismissal of claim based on officials' alleged failure to follow prison procedures); *Reinholtz v. Campbell*, 64 F.Supp.2d 721 (W.D.Tenn. 1999), *aff'd.*, 198 F.3d 247 (6th Cir. 1999)("In a § 1983 action, a federal court considers whether a constitutional right has been infringed, not whether bureaucratic procedures have been violated.").

Significant portions of the affidavit testimony of Defendant Weston and Nurse Evans regarding the post-use of force time period are corroborated by the video evidence, although the Plaintiff is not visible during the entire video segment.   Defendant Weston's affidavit testimony establishes, and the Plaintiff does not refute, that the video depicts the Plaintiff standing in his cell immediately after the use of pepper spray.   (Docs. 54-4, ¶ 20; 54-8). During the portions of the video in which the Plaintiff is visible, he is seen walking around his cell, and refusing to comply with officers' directives to turn over the weapon in his cell and/or be handcuffed.   (Doc. 54-8).   Plaintiff is eventually compliant with the directive to be handcuffed, and is then escorted out of his cell, walking under his own power, with only slight sounds of throat clearing and no visible loss of consciousness, coughing, or vomiting.   *Id.* The video shows that the Plaintiff was immediately taken away from the area to a shower cell,

8

where he waited to be examined before decontamination.  *Id.*  The Court does note that there are significant portions of the video evidence in which Plaintiff is not visible because the camera is directed at a wall or a door.

In response to Defendant Weston's summary judgment motion, the Plaintiff has filed his affidavit and the sworn statements of other inmates.  (Docs. 63-1 –63-5).  The inmate statements submitted by the Plaintiff do not appear to relate to the pepper spray incident itself. (Docs. 63-4, 63-5).  To the extent that the Plaintiff asserts that Defendant Weston's summary judgment motion is untimely, the Court notes that Defendant Weston filed his Answer on November 4, 2013 (Doc. 35), and therefore had until March 7, 2014 to file a dispositive motion.  *See* Doc. 11; Fed. R. Civ. P. 6(d).  Defendant Weston's Motion for Summary Judgment complied with this deadline and was therefore timely filed.

In his deposition and affidavit testimony, the Plaintiff's recitation of the pertinent facts generally does not conflict with that of Defendant Weston, with the exception of the following allegations:   Plaintiff states that Defendant Weston initially told Plaintiff only to hand him the shank, rather than giving the Plaintiff the option of being handcuffed so that Weston could enter the cell; Plaintiff maintains that Defendant Weston sprayed into the cell two times with the pepper spray, and that the spray caused Plaintiff to suffer vomiting, difficulty breathing, loss of consciousness, and eye damage; and, Plaintiff maintains that the first spray lasted between 1 and 2 minutes, rather than 3 seconds.   (Doc. 54-3, pp. 16, 18, 23, 24).   Although Plaintiff states in his affidavit that he was fearful of an attack by the inmate who had dropped the shank into his cell, and did not want to touch the shank as it was covered with blood,

9

Plaintiff does not refute Defendant Weston's testimony that Plaintiff refused to comply with Weston's orders to turn over the weapon.   (Doc. 63-3).

Viewing the facts in the light most favorable to the Plaintiff as the non-moving party, the evidence shows that Plaintiff failed to comply with Weston's orders that Plaintiff turn over the weapon that had been dropped into his cell and that Defendant Weston released pepper spray into the Plaintiff's cell.    In an effort to gain control of the situation and recover the weapon, Defendant Weston sprayed pepper spray, according to the Plaintiff, two times, into the Plaintiff's cell through the tray flap opening, once in a one to two minute burst, and again for approximately 10-15 seconds.

In regard to the first use of force factor to be considered, the need for the use of force was established by Plaintiff's refusals to comply with Defendant Weston's orders.   As in *Sanchez v. McCray*, 349 Fed.Appx. 479 (11th Cir. 2009), it is clear from Plaintiff's recast Complaint, affidavits, and deposition testimony that he refused to comply with the Defendant's orders. Defendant Weston's subsequent use of pepper spray "in order to gain control of [the inmate] and force him to comply with [his] orders" is not excessive force.   Rather than comply with the initial directives to turn over the weapon, Plaintiff refused and attempted to ask why he would be pepper sprayed.   "Prison guards may use force when necessary to restore order and need not wait until disturbances reach dangerous proportions before responding."   *Bennett v. Parker*, 898 F.2d 1530, 1533 (11th Cir. 1990).   "Pepper spray is an accepted non-lethal means of controlling unruly inmates."   *Danley*, 540 F.3d at 1307.   "And prison guards do not have the luxury or obligation to convince every inmate that their orders are reasonable and

10

well-thought out.   Certainly they are not required to do so where an inmate repeatedly fails to follow those orders."   *Id.*   Thus, the need for the use of force, the first factor to be considered in the excessive force analysis, was established "by the undisputed evidence that [the inmate] created a disturbance." *Bennett*, 898 F.2d at 1533.

The second factor to be considered, the relationship between the need for force and the amount of force used, weighs against a finding of a constitutional violation, as "[a] short burst of pepper spray is not disproportionate to the need to control an inmate who has failed to obey a jailer's orders."   *Danley*, 540 F.3d at 1307 *citing Vinyard v. Wilson*, 311 F.3d 1340, 1348 (11th Cir. 2002 ("Courts have consistently concluded that using pepper spray is reasonable . . . where the plaintiff was . . . refusing police requests.").   Plaintiff had clearly not stopped resisting Defendant Weston's efforts to control him after the first pepper spray, as he continued to not hand over the weapon or allow himself to be handcuffed. (Doc. 54-3, pp. 17- 18); *Cf. Danley*, 540 F.3d at 1309 ("Once a prisoner has stopped resisting there is no longer a need for force, so the use of force thereafter is disproportionate to the need."); *Nasseri v. City of Athens*, 373 Fed.Appx. 15, 18 (11th Cir. 2010) (use of pepper spray against inmate struggling with officer was permissible use of force); *Sanchez*, 349 Fed.Appx. at 483 (use of pepper spray against inmate who refused to comply with officers' orders was permissible use of force). Plaintiff does not dispute that he continued not to comply with the officers' directives before and after the first burst of pepper spray.   (Doc. 54-3, pp. 15-17).

Although Plaintiff maintains that the first burst of pepper spray rendered him unconscious, the facts faced by Defendant Weston showed Plaintiff's continued failures to

comply with directives.   The weapon was still loose in the Plaintiff's cell and Plaintiff had not

yet either turned over the weapon or submitted to handcuffing.   Accordingly, the threat from

the unretrieved weapon in Plaintiff's immediate vicinity continued to exist.   The Plaintiff

does not allege that Defendant Weston was aware of any loss of consciousness on the

Plaintiff's part.   *Cf. Skelly v. Okaloosa County Bd. Of County Comm'rs.*, 456 Fed.Appx. 845,

847 (11th Cir. 2012)(continued use of Taser on detainee after and while she was clearly

unconscious supported reasonable inference that defendant officers applied force maliciously

and sadistically).   After any period of unconsciousness, the Plaintiff admits that he was

communicating with the officers from a standing position and that he continued not to follow

the officers' orders before the alleged second application of pepper spray.   *Id.* at pp. 17-20.

Any factual disputes involving the length of the first burst of pepper spray and whether a

second burst occurred, do not create a reasonable inference that Defendant Weston acted

maliciously and sadistically to cause harm.   When analyzed against the continued need for

force, in the form of the Plaintiff's continued refusal to turn the weapon over or be handcuffed,

Defendant Weston's use of pepper spray was justified both the first and second times.   Under

Plaintiff's version of events, a reasonable jury could not conclude that the amount of force

Defendant Weston used, spraying for 1 to 2 minutes and again for 10 to 15 seconds, was not

reasonably proportionate to the need for that force.

In regard to the third issue concerning resulting injury, Plaintiff contends that he suffered

loss of consciousness, vomiting, eye irritation, and breathing difficulties as a result of the

pepper spray.   The medical evidence before the Court does not confirm this level of injury

alleged by the Plaintiff, and the Plaintiff has not submitted evidence that supports his contentions.   Plaintiff's medical records show that Plaintiff suffered vision problems and eye infections well before the January 15, 2013 pepper spray incident, and reveal that Plaintiff continued to seek eye examinations thereafter.   (Doc. 54-12).   The Use of Force Assessment shows no injury upon examination of the Plaintiff, although the report notes that Plaintiff refused various objective testing.   (Doc. 54-11).   "Any injuries or discomfort [Plaintiff] suffered as a necessary result of a dose of pepper spray were neither substantial nor long lasting", as pepper spray "is designed to disable a suspect without causing permanent physical injury."   *Danley*, 540 F.3d at 1308.

It is undisputed that a weapon was in Plaintiff's immediate vicinity, that Plaintiff had a history of possessing shanks prior to this incident, and that Defendant Weston and other officers were attempting to secure the area and verify the status of the stabbing victim and perpetrator.   Thus, the fourth use of force factor weighs against finding a constitutional violation, as the extent of the threat reasonably perceived by the officers on the basis of facts known to them, including an inmate refusing to comply with orders and other inmates having been out of or able to exit their cells, would reasonably permit the use of some force in response.

Fifth and finally, Defendant Weston's use of the pepper spray instead of physical contact with the Plaintiff's person evidences an attempt to temper the use of force response. "[T]he initial use of pepper spray is not necessarily a constitutional violation. . . [and] does not cause any substantial or long-lasting injury . . . [as] a very reasonable alternative to escalating a

13

physical struggle." *Nasseri*, 373 Fed.Appx. at 20.   Guards are "permitted to use some force in controlling the situation and preventing it from escalating."   *Id.*

As in *Vicks v. Knight*, 380 Fed.Appx. 847 (11th Cir. 2010), where that plaintiff presented no evidence of excessive force beyond his own affidavit, this Plaintiff has presented no evidence beyond the bare assertions of his recast Complaint, repeated in his affidavit and deposition testimony, to establish Defendant Weston's excessive use of force.   *Vicks*, 380 Fed.Appx. at 852; *Smith v. Sec'y., Dep't. of Corrections*, 2013 WL 3838090 (11th Cir. July 26, 2013) (defendants entitled to summary judgment on excessive force claim; prisoner did not rebut defendants' summary judgment showing by designation of specific facts beyond the pleadings; record supported finding that prisoner suffered only minor swelling as a result of alleged use of force).   *Cf. Logan v. Smith*, 439 Fed.Appx. 798 (11th Cir. 2011) (entry of summary judgment not appropriate in excessive force case wherein evidence suggested some level of injury to the plaintiff, no reliable medical evaluation had been conducted, and Plaintiff presented his own affidavit and affidavits of other individuals testifying to use of force). Here, "[Plaintiff's] version of events . . . was contradicted by all of the relevant evidence, with the exception of his own [statement of claim in the recast Complaint, affidavits and deposition] . . . and thus [a reasonable jury] could not reasonably infer that [Defendant Weston] used anything more than a *de minimis* amount of force against [the Plaintiff]."   *Vicks*, 380 Fed.Appx. at 852.

## Conclusion

Inasmuch as the Plaintiff has failed to sufficiently rebut Defendant Weston's summary

judgment showing regarding Plaintiff's excessive force claim, it is the recommendation of the undersigned that Defendant Weston's Motion for Summary Judgment be **GRANTED.** Pursuant to 28 U.S.C. § 636(b)(1), the parties may file written objections to the recommendations contained herein with the Honorable Hugh Lawson, United States District Judge, WITHIN FOURTEEN (14) DAYS after being served with a copy of this Recommendation.

      **SO ORDERED and RECOMMENDED**, this 2nd day of May, 2014.


                **s/ *THOMAS Q. LANGSTAFF***

                **UNITED STATES MAGISTRATE JUDGE**

asb

15